Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. Star Insurance Company is the carrier on risk.
3. An employer-employee relationship existed between the deceased employee and defendant-employer at all relevant times.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment which resulted in his death on 29 March 1998.
5. The parties have stipulated to the introduction of the following evidence:
a. 1998 W-2 of Hilbert Stevens;
b. North Carolina Industrial Commission Form 22;
c. Letters of Co-Administration;
d. Application of Letters of Administration;
e. Inman Funeral Home bill;
f. Death Certificate of Hilbert Stevens;
g. Judgment of Divorce;
 h. Handwritten letter of 2 April 1998, from Tracey Allen;
i. Fee Agreements;
j. 1997 W-2 of James Carter;
k. Dependency investigation report.
 ***********
Based upon all of the competent evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of his death, decedent was a 26 year old male who began work for defendant-employer on 23 March 1998, and was employed by defendant-employer for a total of six days. Defendant-employer is in the business of constructing and servicing cellular telephone towers. On 29 March 1998, decedent fell from a telephone tower and sustained injuries which resulted in his death.
2. Terry Allen, owner of defendant-employer business, provided testimony concerning decedents job duties and pay scale. Decedent was hired as a tower hand and was paid $12.50 per hour and overtime. Overtime is considered to be any work over 40 hours per week and was paid at a rate of time-and-a-half, or in plaintiffs case, $18.75. During the six days that decedent was employed, he earned $906.25 in wages. Decedent also received an additional $15.00 per diem for each day worked which was intended to reimburse him for meals. Employees did not receive the per diem daily, but the amount was calculated and added to each regular payment check. Decedents work required him to travel and, on occasion, stay overnight in hotels. The supervisors of each crew maintained a company credit card and the employees hotel rooms were paid directly by the supervisors rather than reimbursing the employees. The amount of hours that decedent would be required to work depended on the weather. Employees are given two weeks vacation per year.
3. At the hearing before the Deputy Commissioner, defendants presented evidence of wages earned by a similarly employed full-time employee, James Carter. Carters W-2 Wage and Tax Statement indicates that he earned $25,573.00 in 1997, a figure which includes overtime, but not the $15.00 a day per diem. Carters job title was lead tower hand, but Mr. Allen testified that there was no difference between a lead tower hand and a tower hand in terms of hours or wages. Carter earned $12.00 per hour and was paid time-and-a-half for overtime. Mr. Allen testified that had decedent worked a full year, he would have worked a similar number of hours as Carter, depending on the weather.
4. By Order dated 15 February 2001, the Full Commission reopened the case for the taking of further evidence regarding (1) the 1997 time sheets and corresponding wages of James Carter; (2) evidence as to whether the weather in the location of Mr. Carters employment and other factors may prevent his wages from being considered as "wages of a similar employee; (3) whether there is an employee whose work experience with defendant-employer was more similar to that of decedent than Mr. Carter; and (4) any other evidence relevant to establishing decedents average weekly wage. Defendants response to the motion, dated 19 March 2001, indicated that because the employer was no longer in business and no further business records existed, the evidentiary questions posed by the Full Commission were not answerable. Accordingly, the undersigned find that because of the brief nature of decedents employment with defendant-employer, the record of the wages of Mr. Carter as wages of a similar employee constitutes the best and fairest method of computing decedents average weekly wage.
5. Although James Carters base hourly rate was $12.00 and decedents base hourly rate was $12.50, both performed the same job duties as tower hands, both possessed similar experience and decedent would have worked a similar number of hours during the course of a year as Carter. Carters average weekly wage was $491.79, with a resulting compensation rate of $327.87, based on his 1997 W-2 that included overtime. Dividing Carters average weekly wage by the amount of $12.00 per hour, it is established that Carter worked an average of approximately 41 hours per week. Multiplying decedents $12.50 per hour wage by 41 hours per week yields an average weekly wage of $512.50, inclusive of overtime, with a resulting compensation rate of $341.68.
6. The $15.00 a day per diem is not included in the calculation of decedents average weekly wage. When an employee is given a travel allowance that does not exceed expenses, the allowance is not considered as income. There is no evidence that the amount decedent received for meal reimbursement exceeded his actual expenses for meals; therefore, it is not income for the purposes of calculating decedents average weekly wage.
7. Decedent was survived by his mother, Wanda F. Stevens, his father, Ed L. Stevens, and his sister, Deborah Reeves. Prior to his death, decedent had been married once; however, that marriage was concluded by a Judgment of Divorce on May 19, 1997. There were no children of that marriage. Defendants have conducted a reasonable, diligent and good faith investigation to determine whether there were any children born to decedent prior to his death and whether there were any persons who were wholly or partially dependant for support upon decedent at the time of the accident. No such children or other persons were found to exist and there is no evidence to suggest that decedent provided any type of financial support to any person.
8. Pursuant to N.C. Gen. Stat, 97-40, decedents mother, father and sister are considered "next of kin who, because they were neither wholly nor partially dependent upon decedent, shall receive workers compensation death benefits according to the general law of intestate succession. Pursuant to N.C. Gen. Stat. 29-15(3), which governs intestate succession, decedents parents, Wanda F. Stevens and Ed. L. Stevens, shall share decedents worker compensation death benefits in equal shares.
9. Defendants have paid $2,500.00 towards payment of decedents burial expenses.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Decedent-employee sustained an injury by accident arising out of and in the course of his employment which resulted in his death. N.C. Gen. Stat. 97-2(6).
2. Decedent-employee is survived by his mother, father and sister who are considered "next of kin. Decedent-employees mother and father are each entitled to receive one-half of the present value of 400 weeks of compensation. N.C. Gen. Stat. 97-38; 97-40; 29-15.
3. Due to the short period of time in which decedent was employed by defendant-employer and the nature of the employment and its dependence upon the weather, calculating decedents average weekly wage by multiplying his six day income by 52 would result in an unjust result. Therefore; given the evidence contained in the record, the most equitable method of computing the decedents average weekly wage is to use the amount earned by a person of the same grade as was the decedent. N.C. Gen. Stat. 97-2(5).
4. The $15.00 per diem payment decedent received as reimbursement for meals does not constitute income as there is no evidence that the amount exceeded decedents actual meal expenses. Tyson v. Carolina Telephone andTelegraph Company, 70 N.C. App. 593, 320 S.E.2d 326 (1984).
5. Defendants have paid $2,500.00 towards payment of decedents burial expenses. N.C. Gen. Stat. 97-38.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. The defendants are to pay the plaintiffs, Wanda F. Stevens and Ed L. Stevens, subject to an attorney fee approved below, an equal share of 400 weeks of compensation at the rate of $341.68 per week. Pursuant to N.C.G.S. 97-40, said compensation shall be commuted to its present value.
2. An attorneys fee in the amount of 15% of the compensation awarded to plaintiffs in paragraph one of this award is approved for plaintiffs counsel. Said amount of the commuted present day value is to be subtracted and sent directly to plaintiffs counsel in equal shares between the Soles, Phipps, Ray, Prince and Williford firm and the McGougin, Wright Worley and Harper firm.
3. Defendants shall pay the costs.
This the ___ day of April, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER